UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WYCQ, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:05-0979 |
| NATIONAL MUSIC MARKETING, INC., ) | Judge Trauger |
| ) | |
| Defendant/Counter-Plaintiff, ) | |
| ) | |
| and JOSEPH R. GROSSMAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM and ORDER

Pending before the court is Plaintiff's Motion to Summarily Dismiss by Reason of Defendant's Lack of Standing (Docket No. 22), to which defendant National Music Marketing, Inc. ("NMM") has responded (Docket No. 26), and the plaintiff has replied (Docket No. 27). For the reasons discussed herein, the plaintiff's motion will be denied.

## FACTS and PROCEDURAL HISTORY

This case arises primarily from a dispute about a contract between the plaintiff, WYCQ, Inc. ("WYCQ"), and one defendant, NMM, of which the other defendant, Joseph Grossman, is the president and chief executive officer.[1] WYCQ, a radio broadcasting corporation in

---

[1] Unless otherwise noted, the facts have been drawn from WYCQ's Complaint (Docket No. 1) and NMM's Counterclaim (Docket No. 15 at 7-10).

1

Nashville, Tennessee, entered into an oral agreement with NMM, a music promotion company in Tarzana, California, in February 2004. Under the terms of this agreement, NMM was to purchase air time on WYCQ and its affiliated stations, during which the stations would play music recorded by NMM's clients. These time buys, known in the music industry as "spins," are regulated by federal anti-payola statutes. *See*, *e.g.*, 47 U.S.C. §§ 317, 508 (2000). Among other things, these statutes require the stations to identify spins as sponsored air play. *See* 47 U.S.C. § 508(a).

For the year after the formation of the contract, WYCQ played the spins and submitted invoices for them to NMM. NMM claims that, during this period, it "paid in excess of $700,000.00 to WYCQ for advertisements and promotions, including payments intended to be used for promotional activities, such as trips for winners of contests." (*See* Docket No. 15 at 8.) WYCQ asserts that, while NMM did compensate it for some spins, it made its last payment in January 2005, at which point it had an outstanding balance of approximately $111,690.

According to WYCQ, Grossman agreed to pay the remaining balance after NMM recovered the money it anticipated receiving from a then-pending lawsuit against various record companies. WYCQ claims that, under the terms of this alleged agreement, NMM had ninety days in which to collect on its other lawsuit and pay WYCQ. WYCQ brought suit against NMM in November 2005, after this time had elapsed without payment. Among other things, WYCQ's Complaint includes claims for breach of contract, fraudulent misrepresentation, and conversion.

After WYCQ filed suit, Grossman began to call into question the legality under the anti-payola statutes of some of the station's practices. (*See* Docket No. 27-4.) NMM then filed counterclaims against WYCQ that noted WYCQ's purportedly illegal actions and alleged that

2

WYCQ both had breached its contract with NMM and had wrongfully converted the funds paid to it for the spins. (*See* Docket No. 15 ¶¶ 6, 11-15.) WYCQ now moves to dismiss "any and all claims founded on allegations of violations of sections 317 and 508 of the United States Code asserted in the Counterclaim." (*See* Docket No. 23 at 1.)

## ARGUMENT

While WYCQ does not state under which rule it brings its Motion to Dismiss, it is presumably employing Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject-matter jurisdiction. *See Coal Operators & Assocs. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (noting that standing is a jurisdictional requirement that should be addressed under Rule 12(b)(1)). Under Rule 12(b)(1), this court must "accept as true all material allegations contained in the [C]omplaint and liberally construe them in favor of the complaining party." *See Am. Canoe Ass'n v. Water & Sewer Comm'n*, 398 F.3d 536, 540 (6th Cir. 2004) (indicating the standard of review that governs motions to dismiss for lack of standing). With this standard in mind, the court turns to a review of the WYCQ's Motion to Dismiss.

In support of its Motion to Dismiss NMM's counterclaims, WYCQ argues that, because no private causes of action exist under the federal anti-payola statutes employed by NMM, it is without standing to bring suit thereunder. (*See id.*) While NMM recognizes that these statutes do not give rise to private causes of action, it claims that any breach of them would somehow demonstrate both WYCQ's breach of contract and its conversion of NMM's funds for its own use. (*See* Docket No. 26 at 3-4.)

NMM correctly notes that, in some instances, "contracts based on a legitimate subject

3

matter that are performed in an unlawful manner are . . . unenforceable." *See, e.g.*, *U.S. Nursing Corp. v. St. Joseph Med. Ctr.*, 39 F.3d 790, 792 (7th Cir. 1994) (citing a number of cases in which contracts were voided where, for instance, an unlicensed attorney sought to recover fees or an unlicensed physician sued his employer for breach of contract).

Importantly, however, the Supreme Court has held that a violation of a law that is collateral to an underlying contract does not render the contract unenforceable. *See Kelly v. Kosugau*, 358 U.S. 516, 518-20 (1959) (indicating that "the plea of [contract illegality] based on violation of [a federal law] has not met with much favor in this Court"); *see also Arkla Air Conditioning Co. v. Famous Supply Co. of Cleveland, Inc.*, 551 F.2d 125, 126-27 (6th Cir. 1977). Rather, longstanding principles hold that the determination as to whether a contract must be voided based on the illegal conduct of one of the signatories turns on the degree to which the violated law is ancillary to the underlying contract. *See Old Dominion Transp. Co. v. Hamilton*, 131 S.E. 850, 854 (Va. 1926) ("It is true that not every illegal act in performing a contract will vitiate recovery; thus if a carpenter in building a legal fence commits a trespass, this will not preclude recovery for the fence . . . .").

As such, even if WYCQ had somehow violated anti-payola statutes in the performance of its contract with NMM, such violation likely would be so ancillary to the underlying contract as to have no impact on it. Thus, NMM's assertions that these violations would indicate WYCQ's conversion of its funds, as well as its breach of their contract, lack merit. (*See* Docket No. 26 at 3-4.)

This lack of merit, however, does not prove fatal to NMM's counterclaims such that they should be dismissed. Rather, as noted by NMM, its breach of contract and conversion claims do

4

not stand on statutory violations alone. (*See id.* at 4.) Instead, they appear to be garden-variety allegations that WYCQ (1) breached the parties' contract by improperly conducting contests sponsored by NMM; and (2) converted for its own use money that NMM had allotted for the contests. (*See id.*) Thus, while WYCQ has properly called into question one of the bases for these claims, it cannot succeed in dismissing them altogether, as they rest on other grounds.[2] As such, its Motion to Dismiss will be denied.

## CONCLUSION

Because NMM's counterclaims are not solely based on WYCQ's alleged violations of anti-payola statutes, Plaintiff's Motion to Summarily Dismiss by Reason of Defendant's Lack of Standing (Docket No. 22) is hereby DENIED.

_____
ALETA A. TRAUGER
United States District Judge

---

[2] Because WYCQ has moved to dismiss only those portions of NMM's counterclaim that are based on statutory violations, the court need not address the validity of these remaining claims.